IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ESTATE OF BEVERLY E. BERLAND, by its personal representatives, Cindy Gilman and Andrea Frazin,

      *Plaintiff*,

v.

No. 1:18-cv-02002-SB

LAVASTONE CAPITAL LLC,

      *Defendant*.

---

Daniel R. Miller, Donald L. Gouge, Jr., Daniel A. Cohen, Jim Walden, Tricia R. Lyons, WALDEN MACHT & HARAN LLP, Philadelphia, PA.

      *Counsel for Plaintiff.*

Megan Ward Cascio, Sabrina M. Hendershot, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Julius A. Rousseau, III, Andrew Dykens, ARENTFOX SCHIFF LLP, New York, NY.

      *Counsel for Defendant.*

---

**MEMORANDUM OPINION**

---

November 18, 2022

BIBAS, *Circuit Judge*, sitting by designation.

    I ordered the parties to submit calculations for the total amount Lavastone owed the Estate as of November 10, 2022. D.I. 189. The Estate said $6,574,997.41. D.I. 190

at 1. Lavastone said $5,000,000. D.I. 191 at 1. Both parties miss the mark. As of the date of judgment November 18, 2022, that amount is $7,498,766.31.

Ordinarily, "[p]rejudgment interest serves two purposes: first, it compensates the plaintiff for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011). So "[a]s a general rule, interest accumulates from the date payment was due to a party." *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1262 (Del. 2010). "For insurance claims," for example, "interest accumulates from the date a party actually demands payment," which is often approximated by the filing of the complaint. *Id.*

This case is different. The Estate is not making an insurance claim. Rather, its claim comes from Delaware's insurable-interest statute, which instructs that "any benefits accruing upon the death of … the insured" go to the Estate, not Lavastone. 18 Del. C. § 2704(b). The statute thus requires that interest be calculated from the date of Berland's death.

This reading best reflects economic reality. The "benefit[] accruing upon" Berland's death was $5,000,000 in 2015 dollars. That benefit, translated into today's dollars to account for the time value of money, is what Lavastone owes the Estate.

This reading also furthers Delaware public policy. STOLI schemes "offend the longstanding public policy" of Delaware. *Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 56 (Del. 2022) (en banc). So even if "Berland and Lavastone were

engaged in a STOLI scheme, the General Assembly has prescribed that the estate should receive the proceeds of the policy as a matter of public policy." *Lavastone Cap. LLC v. Estate of Berland*, 266 A.3d 964, 974 (Del. 2021). Letting Lavastone keep the interest that accrued on the STOLI-scheme payout until 2018 would undermine that public policy.

Both parties overlook public policy and so miss the mark. They analogize to situations, like wrongfully withheld insurance payouts, where the defendant was entitled to the money until the plaintiff asked for it. D.I. 190 at 3, 191 at 3–4. But here, Lavastone should never have had the money. *See Estate of Malkin*, 278 A.3d at 56. So it is not entitled to the interest it presumably earned on that money, either.

I must now estimate the present value of that $5,000,000 benefit.

The initial period is easy to calculate: while Lavastone's money was still with Lincoln, it was earning interest. That came to $11,849.58 on December 22, 2015. So I will begin with a base amount of $5,011,849.58 on December 22, 2015.

The next period—from that day until the entry of judgment—is harder. It is impossible to know exactly how much benefit Lavastone got from its use of the money during that time or how much benefit the Estate would have gotten. But during the meet-and-confer process, the parties agreed to the statutory default: "5% over the Federal Reserve discount rate … as of the time from which interest is due." 6 Del. C. § 2301(a); D.I. 190 at 4 n.3. In December 2015, that discount rate was 1.00%, making the applicable rate 6.00%. FED. RSRV. BANK, Interest Rates, Discount Rate for United States, https://fred.stlouisfed.org/series/INTDSRUSM193N. The Estate has

suggested simple, rather than compound, interest "to simplify the proceedings." D.I. 190 at 4 n.2. But for a sophisticated commercial entity like Lavastone, complex interest is more appropriate. *Williams Cos., Inc. v. Energy Transfer LP*, 2022 WL 3650176, at *6 (Del. Ch. Aug. 25, 2022). I will apply annual compounding.

Compound interest is computed using this formula, where $A$ is the total amount, $P$ is the initial principal, $r$ is the interest rate expressed as a decimal, $n$ is the number of times interest is compounded per time period, and $t$ is the number of time periods expressed as years and fractions of years:

$$A = P\left(1 + \frac{r}{n}\right)^{nt}$$

Applying that formula here, we get:

$$\$7{,}498{,}766.31 = \$5{,}011{,}849.58\left(1 + \frac{0.06}{1}\right)^{1(6+(334/365))}$$

So that is what Lavastone must pay: $7,498,766.31 as of November 18, 2022.

Postjudgment interest accrues at the statutory rate "equal to the weekly average 1-year constant maturity Treasury yield … for the calendar week preceding the date of the judgment" with annual compounding. 28 U.S.C. § 1961(a). Last week, that was 4.73%. FED. RSRV. BANK, Market Yield on U.S. Treasury Securities at 1-year Constant Maturity, Quoted on an Investment Basis, https://fred.stlouisfed.org/series/DGS1. So postjudgment interest will accrue on the $7,498,766.31 at 4.73% and compound annually.